C. H. SAMPSON et al., Appellees, v. EARL JUMP, Appellant.

JUDGMENT: Finality of Adjudication. A defendant who, in an
1 action for the recovery of the purchase price of property, defensively pleads and unsuccessfully litigates the question of fraud in the contract, may not again present such issue as the basis for a counterclaim in a subsequent and independent action by the same plaintiff, even though, in the first action, the plaintiff was also unsuccessful on the ground that he was pursuing the wrong remedy.

JUDGMENT: Matter Litigated—Opinion of Court. In determining
2 in one action the exact matter litigated in a former equity action embracing several issues, the court may resort to the *opinion* of the lower court.

*Appeal from Audubon District Court.*—O. D. WHEELER, Judge.

FEBRUARY 18, 1920.

ACTION to recover on notes. Defendant pleads counterclaim. Plaintiffs reply that matters set up in counterclaim have been adjudicated in a former action. Judgment for the plaintiffs for the amount of notes in suit. Defendant's counterclaim dismissed, as having been adjudicated in a

former action adversely to the defendant. Defendant appeals.—*Affirmed.*

*White & Clarke* and *Graham & Graham,* for appellant.

*Mantz & White,* for appellees.

GAYNOR, J.—Plaintiff brings this action to recover on two promissory notes. The defendant admits the execution of the notes, and that the amount alleged therein is due, but pleads, by way of counterclaim, that the plaintiffs are indebted to him in a sum far in excess of the notes, and, as a basis for such claim, says that, on or about the 14th day of October, 1911, the plaintiffs were the owners of certain land in Saskatchewan, Canada, and, for the purpose of inducing him to take the land and to enter into a contract to purchase it, falsely and fraudulently represented the character of the land, its condition, and other matters which went to affect the value of the land; that these representations and statements made touching the land were believed by the defendant, and by them he was induced to enter into a contract for its purchase, and to take possession of the same; that the representations were untrue; that plaintiffs knew they were untrue, and made them for the purpose of inducing the defendant to enter into the contract; that the character and condition of the land were not as represented; that the land was not adapted to agriculture and stockraising, as represented; that, after defendant had entered into the contract, he went into possession of the land and occupied the same during 1912, 1913, and 1914, and attempted to farm the same; that he spent a large amount of time and money and labor in attempting to farm the same, as contemplated by the contract, and did not discover that the representations were untrue until the latter part of 1914; that he then discovered them to be absolutely false, and thereupon notified the plaintiffs that he rescinded the contract, and refused to complete and carry it

1. JUDGMENT:
finality of
adjudication.

out; that the plaintiffs assented thereto, and resumed the possession and occupancy thereof. He now sues by way of counterclaim, to recover the expense incurred in moving his family to the land, the expense of returning from the land, the reasonable value of time spent in attempting to farm the land, the amount reasonably spent in attempting to improve the farm, in breaking up the land, etc., and for improvements put upon the land, taxes paid, etc.

To this counterclaim the plaintiffs filed a reply, saying that the matters and things set out in defendant's counterclaim have been adjudicated between the parties in a suit heretofore brought in the district court of Dallas County by these plaintiffs against the defendant; that, in said suit, the plaintiffs sought to recover a portion of the purchase price due upon said contract of sale, and this defendant filed an answer defensively based upon the same allegations of fraud set up in the counterclaim in this suit, and, in a cross-petition based on the same fraud pleaded in his counterclaim, asked affirmative relief, to wit, that the contract be canceled, set aside, and held for naught, because of such fraud, and further filed a counterclaim in which he sought to recover damages based upon the fraud now relied upon in the counterclaim in this suit. The counterclaim, however, was withdrawn before the case was finally submitted to the Dallas County court; but the fraud defensively alleged, and the fraud alleged upon which he predicated a right to have the contract canceled, set aside, and held for naught, remained in the case, and was in the case at the time it was passed upon by the Dallas County court. Upon a hearing in that court, plaintiffs' petition was dismissed upon its merits, and defendant's answer and cross-petition determined and dismissed upon their merits.

The decree relied upon by the plaintiffs as an adjudication of the matters set out by the defendant in his counterclaim in this suit is as follows:

"Now, on this 26th day of June, 1916, this cause having been heretofore submitted to the court upon the pleadings and the evidence, and taken under advisement to be determined and a decree entered herein in vacation, and the matter coming on for final determination and decree, and the court being fully advised in the premises, finds that the plaintiffs' petition should be dismissed on its merits, for the reason that they have mistaken their remedy, and that the defendant's answer should be dismissed on its merits, and that each of the parties hereto should pay the costs made by such party therefor. It is, therefore, considered and decreed by the court that the plaintiffs' petition be and the same is hereby dismissed, and it is further ordered that judgment be and the same is hereby rendered against the plaintiffs for the costs made by them, to wit, $102.15, and that judgment be and the same is hereby rendered against the defendant for the costs made by him, to wit, $129.75, and that execution issue against each of them therefor. To all of which each of the parties hereto at the time duly except."

The district court from which this appeal is taken held that this decree adjudicated the rights of the plaintiffs upon the counterclaim urged in this suit, and that the defendant is now estopped to set it up for re-adjudication, and so dismissed the counterclaim, and entered judgment for the plaintiffs upon the notes. From this action, defendant appeals.

The only question here is whether or not the matters herein relied on as a counterclaim were adjudicated adversely to this defendant in the Dallas County suit. If they were, that ends this controversy, so far as the defendant's right to maintain his counterclaim in this suit is concerned. This decree, upon its face, indicates that the facts on which defendant bases his counterclaim in this suit were determined on their merits adversely to defendant's claim made here. The claims here being substantially the same as there, an

adverse finding there would be an adjudication here, and would preclude the defendant from urging them again. But the question still is open for consideration. Did the court there, notwithstanding the recital in the decree, adjudicate the matters involved in the counterclaim in suit here? To determine this, we must go to the record made in the Dallas County suit. Turning to the pleadings in the Dallas County suit, we find that plaintiffs there, being the plaintiffs here, filed a petition substantially as follows:

"The plaintiffs, for cause of action, state that the plaintiffs are residents of Audubon County, Iowa, and that the defendant is a resident of Dallas County, Iowa; that, on or about the 14th day of October, 1911, the defendant purchased of the plaintiffs, on the crop payment plan, the west half of Section 30, Township 28, Range 3 West of the 35th M., Saskatchewan, Canada; that a copy of said contract of sale and purchase is hereto attached, marked Exhibit A, and the same is hereby made a part hereof; that, in accordance with said contract, marked Exhibit A, the defendant took up his residence on said above-described land in the spring of 1912; that the said defendant farmed said premises, and raised crops thereon during the years 1912, 1913, and 1914, and in accordance with the terms of said contract of sale, amounting to approximately $1,800; that the defendant has paid plaintiffs but $500 of said amount, plus the taxes, leaving a balance due of approximately $1,300. Wherefore, plaintiffs asked judgment against the said defendant in the said sum of $1,300 and the costs of this action, taxed at $...... Exhibit A, annexed to the petition, is a copy of the contract annexed to the answer and counterclaim in this case."

To which the defendant replied, by way of answer and cross-petition, to defeat recovery on the contract, that the contract relied upon was procured by fraud, and then set out the same fraud relied on in the counterclaim here, alleg-

ing further that, after discovering the fraud, he notified the plaintiffs that he rescinded the contract, and refused to complete and carry it out, on account of the fraud; and that the plaintiffs had acquiesced therein, and had repossessed themselves of the land. The case stood before the court, then, upon the issues thus pleaded, and the matter was fully tried, and evidence was introduced to support defendant's contention that the contract was procured by fraud. The court found affirmatively that there was no fraud shown by the defendant which justified a rescission of the contract; that the plaintiffs had perpetrated no fraud upon the defendant which defeated their right to recover the consideration provided for in the contract, and so dismissed his answer and cross-petition upon its merits. True, it dismissed plaintiffs' petition, also, upon its merits, but not on the ground that the defendant had established the fraud alleged; but held that, inasmuch as the defendant had attempted to rescind the contract, whether rightful or wrongful, and the plaintiffs had accepted the rescission and taken possession of the land, they were not in a position to recover any part of the consideration provided for in the contract; that "they could not eat their cake and keep it."

The prayer of plaintiffs' cross-petition in the Dallas County suit was that the petition be dismissed, and the contract be decreed to be fraudulent and void, and that it be canceled and set aside. This defense, the court dismissed upon its merits. In the decision of the case, the court said:

"Plaintiffs on the trial of this case introduced many letters from the defendant while he was residing on the land in controversy. The statements and representations contained in these letters are not calculated to impress one with the full confidence he might otherwise have in defendant's testimony, as given on the trial, as to alleged fraudulent statements and representations to induce the defendant to execute the contract. There is no question

but that the defendant sought this deal, and he said on the trial that he had just been in Canada, and felt sure that was the place for him to get a start. Mr. Sampson had never seen the land, at the time the contract was entered into. Whatever was said about these lands was said to Mr. White. Yet it is claimed that Sampson said the soil was like the soil of Viola Township, Audubon County. Under the circumstances, as shown, there can be but little question as to what Sampson did say in this respect. He had been in Canada, but had not seen this land. He no doubt said the conditions in Canada reminded him of the conditions in Viola Township when he first settled there. The court could not find that this was a false or untrue statement. Defendant was, no doubt, disappointed in the improvements he found on the place; but the contract provides for a reduction on the price of the land of $160 on account of the conditions of the improvements, and further provides, in substance, that the defendant should be allowed to use $250 from the funds that would otherwise go to the plaintiffs, to add to the house, etc. The conditions of the land were soon discovered, after defendant took possession, in 1912. All of these matters, if different from the representations of plaintiffs, came to defendant's knowledge within a few months after he moved on the premises. The only thing, then, that he may not have known, if not as represented, was as to the adaptability of the land to agricultural purposes. * * * There can be but little question that, if any misstatements were made by plaintiffs, that in any manner induced defendant to enter into the contract, the falsity was soon discovered by defendant. The law requires that he should act within a reasonable time. * * * While I do not find, as a matter of fact, that the charges of fraud have been sustained by the evidence,—in fact, judging from defendant's letters, the court would not be justified in so finding,—yet, if said charges were established by

a preponderance of the evidence, under the law as announced in cases to which I have referred, defendant, by his conduct, is held to have elected to carry out the contract."

Thereupon, the court set out the letters from the defendant which had been introduced in evidence, bearing upon this question. The court further said:

"In all this correspondence, to this date, the only complaint made as to false representations is the following: 'I have borrowed considerable money of you. The bulk of it has been used right here, to improve your place, as it was not fit for man or beast when I arrived here; and, in fact, had I seen it before I bought it, I would have passed it by. Now everything is in good condition as to fences, buildings, and land. I borrowed something over $500 from you, to break out land that was sold to me as ready for the drill; but we will say nothing more about that.'"

The court further said:

"Mr. Jump seeks relief from his contract, but nowhere claims in these letters that he was defrauded in the purchase of the land; says he cannot stand the opposition in the home any longer, etc., and further says: 'I have no complaint of productiveness. I am not going to Iowa to score Canada. I expect to remain mute as to why I am compelled to quit. Wickhams know all about the trouble. My wife has told them long ago; and later, I wrote a letter to keep very quiet. I will get you a good renter for the place Times will pick up. Prices are good this year. We seem to be in a favorable locality. We have very much to be thankful for. Other parts of Canada are a complete failure, this year. In fact, there has never been a failure in here, according to old-timers. I think it is a great place for stockraising of all kinds. I just got fixed so I could accomplish my desired end, and now it is all at an end.'"

The court said:

"One cannot read these letters without knowing why. In some respects, these letters are stronger against defendant's present contention than were the letters in *Handley v. Handley,* 115 Iowa 151, against the plaintiff. These were written when there was no lawsuit or controversy between the parties, and when there was nothing to induce an untrue statement. I reach the conclusion that proofs fail to establish the alleged fraud, and further that, if such fraud is shown by a preponderance of the evidence, that defendant failed to act with promptness, and that, by his conduct, he elected to carry out the contract."

The court further said:

"The defendant's contention is that there was fraud in the contract, on account of which he had a right to rescind the same. If he was sustained in this contention, there would be no liability on his part for any part of the purchase price, or for damages, nor could specific performance be enforced against him. It has been found that he had no right to rescind the contract on this account, but the fact remained that he abandoned the land, violated the contract, and refuses to further perform. In such case, what are the plaintiffs' rights? Not to recover any part of the purchase price, but to recover damages, if any have been sustained. * * * As the court has found that the defendant did not and could not rescind the contract on the alleged fraud, but that he abandoned the premises without right to do so, and as this proposition is not involved in this branch of the case, the authorities cited demand no further attention. * * * The action at bar was brought as a law action, to recover a part of the purchase price. Defendant's answer was filed, and the case was transferred to the equity side of the docket. No change was made in plaintiffs' claim, or the character of the relief asked. It is yet an action to recover part of the purchase price of

the land. We have found defendant was not entitled to re-
scind the contract, but that he wrongfully abandoned or
breached his contract. Defendant's answer must be dis-
missed on its merits, and this leaves the plaintiffs in court
on a claim they cannot enforce, under the facts in this
case. It follows that, in the judgment of the court, defend-
ant's answer should be dismissed on its merits, and plain-
tiffs' petition should be dismissed, for the reason that they
have mistaken their remedy for the breach of contract by
the defendant. Judgment will be entered in this case in ac-
cord with the facts herein expressed, and further, that
judgment shall be entered against each of the parties for
the costs made by each, and no judgment shall be entered
against one for the costs made by the others."

We have not attempted to set out all that the court
said in its finding, upon which its decree was based, but
enough to show that the case was fully tried and deter-
mined on the issues made, and that the court affirmatively
found against the defendant on its contention that the con-
tract was induced by fraud, and further found that, if in-
duced by fraud, the defendant waived the fraud, and by his
conduct is now estopped from asserting that he was fraud-
ulently induced to make the contract, as a basis for relief,
and found affirmatively that this claim did not defeat
plaintiffs' right to recover the purchase price.

In its ultimate finding, the court said to the defendant:

"I have examined your testimony touching the fraud
which you claim was practiced upon you to induce you to
enter into this contract. You have not sustained this claim,
and plaintiffs' right to recover cannot be defeated upon this
contention. No fraud was practiced upon you; and, if it
were, you have waived the fraud, and are now estopped to
insist upon it against the claim which the plaintiffs are
urging against you, and this claim is dismissed for want
of merit."

It said to the plaintiffs:

"It is true the defendant had no right to abandon this land. You practiced no fraud upon him, but he has attempted to rescind the contract, though wrongful, has abandoned the land, and you have taken possession, and are now in possession, and have been in possession for some years. You have acquiesced in his wrongful rescission of the contract. The contract is, therefore, as between you and him, at an end. You cannot maintain a suit for part of the purchase price provided for in the contract. If you can, then you can consent to a rescission of the contract, and hold the defendant to its performance, and recover from the defendant the whole consideration provided for in the contract, at the same time taking back and receiving from the defendant the consideration which you gave for his promise."

We are not unmindful of the fact that what was said by the court is no part of its decree; but the decree itself states that defendant's contention was dismissed on its merits, and this statement of the decree is fully confirmed by an examination of the records. The defendant had his day in court upon the contention now made, and the court has determined his contention against him. He is now estopped to relitigate it, or to base any claim upon facts adjudicated against him in that trial. As said in *Goodenow v. Litchfield*, 59 Iowa 226, 231:

"The rule, as appears to be well stated by all the authorities, is that, where a former judgment or decree is relied upon as a bar to an action, it must appear, either by the record or by extrinsic evidence, that the particular matter in controversy and sought to be concluded was necessarily tried and determined in the former action."

In *Hahn v. Miller*, 68 Iowa 745, 748, it was said:

"The general rule undoubtedly is that the judgment of a competent court is conclusive between the parties upon

all questions directly involved in the issue and necessarily determined by it."

In equity cases, where a number of matters are raised by the pleadings, and the judgment may proceed upon some one of them, and not upon the others, the opinion or ruling of the court is properly considered for the

2. JUDGMENT: matter litigated: opinion of court. purpose of determining the precise matter which is adjudicated by the judgment.

It is true that, in the Dallas County court, the plaintiffs were not defeated on the ground that they had or had not practiced fraud upon the defendant in procuring the contract, but the defendant tendered that issue, and sought relief against the obligations of the contract upon that issue. He urged that issue defensively to the court, and the court found against him on that issue, and dismissed his answer and cross-petition on its merits. The plaintiffs were defeated upon another ground, also urged by the defendant; but this makes the finding of the court, embodied in its decree, no less binding on the defendant than if defendant had obtained relief from the obligation of his contract on this matter pleaded. Had defendant sustained the matters set up in his answer and cross-petition, based upon the alleged fraud practiced upon him in procuring the contract, it would have put an end to plaintiffs' case. Plaintiffs could not have recovered any part of the consideration, based upon a contract into which they had fraudulently induced defendant to enter. Defendant sought relief from the obligations of his contract upon this ground, and introduced evidence to support this contention. This evidence was reviewed by the court, and found not to sustain the contention. Upon this review and this finding, the court dismissed his contention, and ordered his cross-petition dismissed upon its merits. See *Watson v. Richardson*, 110 Iowa 698.

In *Black v. Miller*, 158 Iowa 293, 298, this court said:

"Where there is a hearing, and no such words as 'without prejudice' appear in the decree, and no reason for dismissal is stated therein, and a decision on the merits is in no wise negatived, the issues raised are presumed to have been raised and decided on the merits."

Upon the whole record, we think the court was right in its holding that the matter urged by the defendant in the counterclaim now in suit was adjudicated in the Dallas County action, and defendant is now estopped to re-adjudicate it here, and its action is—*Affirmed*.

WEAVER, C. J., LADD and STEVENS, JJ., concur.