TITUS LOAN & INVESTMENT COMPANY, Appellant, v. NATURAL GAS PIPE LINE COMPANY of America, Appellee.

No. 43543.

JUNE 16, 1937.

Thos. J. Bray and E. R. Hicklin, for appellant.

George P. Garver, W. O. Weaver, and Devitt, Eichhorn & Devitt, for appellee.

RICHARDS, C. J.—On September 6, 1930, one W. L. Edwards, by written instrument, granted, conveyed and warranted unto the Continental Construction Corporation, now the Natural Gas Pipe Line Company of America, defendant herein, a right-of-way and easement across the farm that is involved in this case, for the construction, operation, maintenance, repair and removal of a pipe line or pipe lines for the transportation of gas, oil, petroleum or any of its products. Other incidental rights were extended to the corporation. The easement was to continue so long as any structure installed thereunder should be used or remain on the premises. Soon thereafter in 1930 defendant exercised these granted rights by constructing a pipe line across the farm. The pipe was laid underground and was a part of a continuous gas pipe line extending from Texas to Chicago. At the time of the trial a million or more customers of defendant were users of natural gas, transported through this line.

Several years before the occurrences above related, Edwards and his wife had encumbered the farm with a mortgage securing a note for $14,000, payable to plaintiff. To foreclose this mortgage plaintiff commenced an action on March 9, 1931, making defendant herein a party defendant thereto. Original notice was served by publication. Defendant appeared and filed answer. Decree of foreclosure was entered. Upon sale under special execution plaintiff bid in the land. A sheriff's deed issued to plaintiff on March 2, 1933.

Defendant, conceding that the mortgage was prior and superior to the easement acquired from Edwards, and that by reason of the foreclosure and nonredemption defendant had lost its right-of-way and easement granted by Edwards, filed an application with the sheriff on February 7, 1933. Therein it was stated that defendant proposed to acquire by condemnation the right-of-way three rods wide for the purpose of maintaining and operating a natural gas pipe line "now constructed and in use across said land." The sheriff was requested to appoint a commission for the purpose of appraising damages pursuant to chapters 383-D1 and 366 of the 1931 Code of Iowa. Such proceedings followed the application that a sheriff's jury made its re-

946

port on March 14, 1933, stating therein that, "After due and careful consideration of the damages to the said real estate, by reason of the right-of-way three rods wide and the pipe line laid therein, we hereby assess the damages to said real estate, consisting of 176 acres more or less, at $1000.00, including Int. and land taken for right of way Dollars. The Int. from April, 1931 to April 1933 is included in the $1000.00." From this assessment of damages plaintiff appealed to the district court, and as part of the appeal filed a petition that was answered by defendant.

In its petition plaintiff alleged, not only that the easement acquired from Edwards had been lost to defendant as conceded by defendant, but that the foreclosure proceedings and sheriff's deed had vested in plaintiff the absolute ownership and title in the pipe and fixtures that defendant had laid across the land. Depending on such claimed ownership of the pipe and fixtures plaintiff further alleged that defendant's application to the sheriff was for the appointment of a commission to condemn not only the right-of-way but the pipe and fixtures that were in the ground. The further allegations appear in the petition that the pipe and fixtures were worth $12,000 and that the condemnation of the right-of-way reduced the value of plaintiff's farm in the sum of $3,000, and claiming to be entitled to recover each of said sums, plaintiff's prayer was that damages be assessed at the aggregate amount, to wit, $15,000 with 6 per cent interest from March 14, 1933. There was a trial to the court. On October 9, 1935, judgment was entered, finding that the issues were with defendant and against plaintiff and sustaining the award of the sheriff's jury. Therefrom plaintiff has taken the appeal now before us.

■■■ Because it is the fundamental thing on which plaintiff's propositions depend, we go to the question whether at the time of the condemnation plaintiff was the absolute owner of the pipe and fixtures installed by defendant on the right-of-way granted by Edwards. Arguing for affirmance of this question plaintiff says that the foreclosure decree established the mortgage "as a first and prior lien upon this pipe line, and adjudicated appellee's interest in the pipe line to be junior and inferior to said lien." But in so defining its position plaintiff surely does not intend to say that the decree contains any express provisions that are even similar to the portion of plaintiff's above state-

ment that we have placed in quotation. No such language is to be found in the decree. In order to make evident all that on which plaintiff could possibly rely, may we digress for examination of the relevant matters that may be found in the foreclosure proceedings?

In neither the original notice, nor in any of the pleadings of the parties, is any statement or pleading of any issue raising any controversial issue as to the ownership of, nor as to the mortgage being a lien on, the pipe and fixtures, nor as to the pipe and fixtures being no longer personal property, but real estate, a part of the land. What is alleged in that respect in the foreclosure petition is that plaintiff is informed and believes that several named defendants, including Continental Construction Corporation (hereinafter referred to as the Continental) have or claim to have some right, title, lien, easement or lease in and upon the *mortgaged real estate*, followed by averment that any such right, title, interest, lien or easement is junior and inferior and subject to plaintiff's lien, "which is a first mortgage upon all of said real estate." The prayer of the petition follows usual practice, asking that the judgment in the foreclosure decree be established as a first and prior lien against the real estate described in the petition and that all rights * * * liens or easements of the defendants in or to said real estate be adjudged to be junior to plaintiff's lien and that all such rights * * * liens or easements of defendants be cut off, excepting rights to redeem. The Continental filed answer, setting up the right-of-way contract executed by Edwards. The answer further alleges that on account of the value of the real estate being in excess of the amount due on plaintiff's mortgage, and if the lands covered by defendant's right-of-way contract are sold to satisfy plaintiff's claim, then in equity plaintiff's securities should be marshalled and the property sold in inverse order of alienation. Such marshalling is prayed in the answer, and that the lands be first offered for sale subject to defendant's right-of-way contract, and in event the amount secured thereby is insufficient to satisfy plaintiff's claim that then the lands be offered free and clear of defendant's right-of-way contract. In an amendment to this answer there is reiteration of the allegations originally made and the additional prayer that the decree provide that the right-of-way and interest of defendant bear its share of the mortgage debt pro rata according to the value at the time the mortgage was given and without

regard to improvements placed thereon by defendant subsequent to execution of the mortgage. By way of reply plaintiff alleged that the real estate was of insufficient value to satisfy the mortgage and that the right-of-way claimed by the Continental runs across said real estate, and that if the farm were sold subject to the alleged easement given to the Continental, an insufficient amount would be realized to satisfy plaintiff's claim. Turning now to the foreclosure decree, it establishes the lien of the mortgage on the described real estate as of November 26, 1921, with priority and superiority to any right, title, interest, lien, easement or right-of-way of the defendant, without mentioning in that connection the pipe or pipe line. In additional portions of the decree, that have much to do with this controversy, there are findings that the Continental is the owner of an easement and right-of-way to construct, reconstruct, operate, maintain, inspect, alter, repair, and *remove,* a pipe line or pipe lines for the transportation of gas, oil and other petroleum products, over and through the mortgaged real estate, and that said right-of-way and easement exists by virtue of the instrument executed by W. L. Edwards, and is junior and inferior and subject to the lien of plaintiff on said real estate. Then follows recital that the Continental has laid a pipe line in the ground across said real estate, and that the same is attached and fixed to the soil of said premises and is a fixture thereof. In the decretal portion, it was adjudged that special execution issue against the described real estate, and that the sheriff thereunder sell said real estate to make the amount of the judgment, and that all rights, title and interests of the defendants be declared junior and inferior to the lien of plaintiff's judgment in and to the real estate or any part thereof, including the buildings, fixtures, improvements, appurtenances and hereditaments thereunto appertaining, and that all such right, title and interest of said defendant of any kind or character therein is hereby barred, foreclosed and cut off, save and except only the statutory right of redemption from sheriff's sale.

It is from these things found in the decree that plaintiff draws its conclusion that the sheriff's deed vested in plaintiff the absolute title to what was defendant's pipe and pipe line, particularly from the court's finding that said pipe line ''is attached to and fixed to the soil of said premises, and is a fixture thereof.'' Necessarily such conclusion is sound only in event

the foreclosure decree was an adjudication not only that the pipe line was attached and affixed and was a fixture to the real estate, but also an adjudication that as a fixture it had in fact become a part of the land, immovable except by consent of the land's owner, no longer personal property, but realty. We are unable to agree with plaintiff that the decree constituted such an adjudication. A fixture is not a part of the real estate unless there are facts that bring about that result. In Fletcher v. Kelly, 88 Iowa 475, 55 N. W. 474, 475, 21 L. R. A. 347, is found this:

"It is said in the case last above cited that the intention is the controlling consideration in determining the whole question. This court had held that 'fixtures are personal chattels annexed to the freehold, and which may be severed and removed by the party who has annexed them, against the will of the owner of the freehold.' Pickerell v. Carson, 8 Iowa [544] 551."

So, although the decree determined that the pipe line was a fixture, that alone is not necessarily an adjudication that such fixture was one that had become realty in character. Viewing the decree in its entirety there is not found therein warrant for holding that it was such an adjudication. The claim that it was such an adjudication has an inherent weakness in the want of any such issue appearing in the original notice, or pleadings of the parties. Of course this might have been cured in the foreclosure action, the defendant appearing and the judgment not being on default, had the parties raised and tried out as a voluntary issue the question of the status of these fixtures. And as the record discloses they did not do so nor attempt to make such an issue, the question under discussion comes within the rule followed in King City v. Southern Surety Co., 212 Iowa 1230, 1240, 238 N. W. 93, 98, from which we quote:

"This court is committed to the doctrine that *res adjudicata* does not rest upon the fact that a particular proposition has been affirmed and denied in the pleadings of the former suit, but upon the fact that it has been fully and fairly investigated and tried therein. See Reynolds v. Lyon County, 121 Iowa 733, 742, 96 N. W. 1096, 1099. We there said:

" 'The prevailing rule is so well expressed in Black on Judgments, section 614, that we quote with approval: ."The

doctrine of *res judicata* does not rest upon the fact that a particular proposition has been affirmed and denied in the pleadings, but upon the fact that it has been fully and fairly investigated and tried; that the parties have had an adequate opportunity to say and prove all that they can in relation to it; that the minds of court and jury have been brought to bear upon it, and so it has been solemnly and finally adjudicated. Now, these conditions are fully met when any question, though foreign to the original issue, becomes the decisive question—the turning point —in the case. In that event it will receive just as full and exhaustive an examination as if it were the sole subject matter of a distinct and independent suit, and therefore should be considered as much settled by the judgment as if it stood alone as the issue in the case. For these reasons the more correct doctrine is that the estoppel covers the point which was actually litigated, and which actually determined the verdict of [or] finding, whether it was statedly and technically in issue or not." ' ''

■■■ Not only does it appear that there was no such issue determined in this case, but if the foreclosure decree be a little further examined in its entirety, and not in piece-meal manner, affirmative findings of the court will be noted, that strongly negative the conclusion that there was the adjudication claimed by plaintiff. That is, the court found that at the time of the decree defendant company owned an easement, across the land, thus dissipating any suggestion that the pipe line had become part of the real estate because this personal property had been attached unlawfully, by a trespasser. And a still more significant finding of the court was that "the defendant Continental Construction Corporation *is the owner* of an easement and right-of-way to construct * * * *and remove* a pipe line or pipe lines * * * over and through the real estate hereinafter described * * *." These findings and rulings of the court are properly considered for the purpose of determining the precise matter which was adjudicated by the judgment. Sampson v. Jump, 188 Iowa 528, 176 N. W. 318, and the decree should be construed in its entirety. Union Cent. Life Ins. Co. v. Eggers, 212 Iowa 1355, 237 N. W. 240.

■■■ Following such rules for interpretation of the foreclosure decree, these findings of the court, and the absence of any apparent claim that the pipe and fixtures had become part

of the real estate, and the absence of any issue thereon, lead to the conclusion that the status of the pipe and fixtures was not determined by the decree. It follows that there was no error in failure of the trial court to allow plaintiff compensation for the pipe and fixtures in addition to the damages to the farm on account of the right-of-way.

The judgment of the district court is affirmed.—Affirmed.

SAGER, PARSONS, ANDERSON, MITCHELL, STIGER, KINTZINGER, and DONEGAN, JJ., concur.

HAMILTON, J., takes no part.