EASTERN IOWA CABLEVISION, INC.,
and Gary Ladick, Plaintiffs-Appellees,

v.

CITY OF IOWA CITY, Iowa, et al.,
Defendants-Appellants.

No. 2–62051.

Supreme Court of Iowa.

Dec. 20, 1978.

John W. Hayek, Iowa City, for defendants-appellants.

Mark H. Rettig and Joseph E. Day, Cedar Rapids, for plaintiffs-appellees.

Considered by REES, P. J., and UHLENHOPP, HARRIS, McGIVERIN and LARSON, JJ.

LARSON, Justice.

Defendant city and council members appeal from an order granting summary judgment in a mandamus action brought to compel an action on plaintiffs' franchise proposal. Plaintiffs in the action were Eastern Iowa Cablevision, Inc., and a representative citizen of the City of Iowa City. They will be occasionally referred to here as "Eastern." Because there were disputed issues of material fact presented to the trial court, and because movants were not entitled to such as a matter of law under statutes involved, we hold it was error to grant summary judgment.

The issues presented for review are: (1) whether there were disputed issues of material fact so as to preclude entry of summary judgment; and (2) even if such disputed facts existed, were plaintiffs entitled to summary judgment as a matter of law upon the basis of statutory construction and application.

The pleadings and affidavits filed constitute the factual basis upon which the trial court entered its summary judgment. These matters must be viewed in the light most favorable to the city, against which the motion is directed. *Schulte v. Mauer,* 219 N.W.2d 496, 500 (Iowa 1974). When so viewed, the facts are set out briefly below.

On December 20, 1977, a petition was filed with the city, requesting that it submit to the voters a proposal to grant Eastern a franchise for cable television service. The petition followed the form prescribed in § 362.4, The Code. The sufficiency of the petition form and filing procedures are admitted by the city and are not at issue here.

Accompanying the petition was a deposit to cover the costs of special election, per § 364.2(4)(d), and *Lame v. Kramer,* 259 Iowa 675, 685, 145 N.W.2d 597, 603 (1966), an application for submitting Eastern's proposal at a special election of the voters of Iowa City and a proposed form of resolution to be passed by the council.

The council did not act on the application and proposed resolution at its meeting of December 20, but did direct its clerk to review the sufficiency of the petition with respect to the provisions of § 362.4, The Code. On January 10, 1978, the council met again but took no action regarding the Eastern franchise, ordering it delayed so the city manager could review the general matter of cable television. On January 24, representatives of Eastern attended another meeting and requested that the city set a special election on the proposal. The council refused to set a date at that time, although the clerk had approved the form of the petition. Eastern's representative was advised that the city manager was still reviewing the whole matter of cable television.

On February 21, 1978, Eastern again requested action to set an election. The members of the council advised its representative that there would be a meeting in the future to discuss cable television franchises and that Eastern's representative would be invited to attend.

The city had previously appointed a special committee to study the general subject of cable television, and it had filed a report on June 26, 1975. This report proposed the creation of a special commission and included drafts of suggested ordinances.

All of the above facts were admitted by the pleadings.

On February 27, 1978, plaintiffs filed their petition and mandamus, alleging that the city, through its council, had "acted arbitrarily and capriciously in refusing to comply with the ministerial requirements" of the franchise statute, Iowa Code § 364.-2(4)(b), by failing to submit Eastern's proposal to a special election. They further alleged that such refusal had been "a persistent course of conduct" on the part of the

city since 1972, that the acts sought to be performed were ministerial and nondiscretionary, and therefore were proper subjects for a mandamus action.

The prayer of the petition sought a writ to require the city to submit the matter to an election on June 6, 1978, and to require the council to pass "in proper form" a resolution as set forth in an exhibit attached to the mandamus petition "at a time sufficient to insure that the proposal of plaintiff . . . be submitted to the City of Iowa City, Iowa, on the 6th day of June, 1978."

Defendants' answer, while it admitted the underlying facts, denied having acted arbitrarily or capriciously, denied their duties were nondiscretionary, and denied plaintiffs had been damaged as alleged. By separate division, defendants alleged the acts required were legislative and discretionary, and therefore the mandamus remedy did not apply.

Defendants also alleged they were proceeding "with reasonable dispatch to analyze the complicated policy issues involved in the area of cable television; and that they had hired a special consultant to advise the council on the matter."

I. Plaintiffs moved for summary judgment under Rule of Civil Procedure 237, contending they were entitled to issuance of a writ of mandamus; that there were no genuine issues as to any material facts, and that, in any event, they were entitled to judgment as a matter of law, regardless of whether any dispute existed as to the facts, because the code sections involved imposed a mandatory duty as to which no discretion applied and required "immediate" calling and holding of a special election without regard to any issues of reasonable promptness under the circumstances.

Defendants filed a resistance to the motion with supporting affidavits contending that the statutes allowed a reasonable time for the council to act; that whether they had acted "arbitrarily and capriciously" was a fact issue; and that the statutes in question made the setting of an election date discretionary, thus precluding mandamus.

Defendants' supporting affidavits included one by the regional director of the Cable Television Information Center, a nonprofit informational organization formed to provide planning assistance to the city. He stated he had advised the council to "carefully study the whole issue of cable television and to solicit as many proposals as possible from potential providers of cable television service before holding a franchise election." He advised the council not to call the election until fall, so it could fully inform the voters and city council. He also had advised the defendants to draft regulatory ordinances, to make them available to all prospective applicants before the election, and to solicit proposals from all interested applicants. He also had recommended delay for further study of many rather technical matters, e. g., to determine the length of franchise terms, establish line extension policies, determine whether to require underground facilities, make channel allocations and determine requirements for minimum system designs. This organization suggested detailed study in 21 separate areas such as these before holding an election. He stated November, 1978, was the "earliest possible time [for election] sufficient to allow the City to complete the process outlined above."

The affidavit of the city manager stated that since the December 1977 filing of plaintiffs' franchise petition, "a great deal of activity has occurred concerning cable television." He stated other applications and petitions had been filed, making a total of eight prospective franchises. He advised the council in January 1978 to hire a special consultant and recommended that all applications be submitted in one election. Under all the circumstances, he felt the November election date was the "earliest possible time" it could be held.

At the time of the hearing on the summary judgment motion, the city had already set an election on the proposal for November 21, 1978, and the court so found in its order. At that time, the court was aware of the problem with that date because of the provisions of § 39.2(1), The Code (prohibits special elections being held on the

first or second Tuesday following a general election). This is apparently the basis for Eastern's claim that no "valid" election date was set by the city as of the date of the hearing. A subsequent action by the council to correct the date is relied upon by the city on appeal, but was not a part of the record of the trial court, and we give it no consideration here.

 Section 364.6, The Code, requires "substantial" compliance by a city with procedures established by the state for exercise of a city power. However, Eastern claims the original council action, setting the election for a date one week too early to be legally permissible, was not even substantial compliance. We disagree. It does not argue that the election would be void,[1] nor that the city could not, by rather simple procedures, correct the obvious oversight well in advance of the election date. Nor does it claim the date was intentionally set for a proscribed date to somehow further thwart the efforts of the applicants.

The city, resisting summary judgment, is entitled to have the facts viewed in the light most favorable to it. *Schulte v. Mauer,* 219 N.W.2d 496, 500 (Iowa 1974). The favorable inference here would be that the city council, by its actions complained of, was following the counsel of its advisors by studying and developing adequate preparations—not to obstruct Eastern's efforts.

Other principles relating to summary judgments should be discussed here. If reasonable minds could draw different inferences and reach different conclusions from undisputed facts, summary judgment should not be granted. *Daboll v. Hoden,* 222 N.W.2d 727, 733 (Iowa 1974). The burden of proving a lack of a genuine issue of material fact is upon the movant. *Schulte v. Mauer,* 219 N.W.2d at 500.

II. Eastern's approach here is basically twofold: (1) the city's actions were unreasonable and capricious, and that its delay was unreasonable; and (2) that even if a factual issue was generated as to their claim of unreasonableness of the city's actions, they still are entitled to summary judgment because § 364.2(4) creates a duty to hold an immediate election on its petition, and failure to hold it "immediately" establishes a breach of a ministerial duty as a matter of law.

 It is true that summary judgment may be entered in a "disputed" case if the only dispute relates to the legal consequences flowing from undisputed facts. *Jacobs v. Stover,* 243 N.W.2d 642, 643 (Iowa 1976); *Goodwin v. City of Bloomfield,* 203 N.W.2d 582, 588 (Iowa 1973).

Eastern contends, as to the council's duty to set an election, that: (1) section 364.-2(4)(b), The Code, creates a duty to "immediately" set it upon filing of a franchise petition; and (2) that "immediate" meant, as the court ordered, within 20 days of the order.

This section states:

No such ordinance shall become effective unless approved at an election. The proposal may be submitted by the council on its own motion to the voters at any city election. Upon receipt of a valid petition as defined in section 362.4 requesting that a proposal be submitted to the voters, the council shall submit the proposal at the next regular city election or at a special election called for that purpose prior to the next regular city election. If a majority of those voting approves the proposal the city may proceed as proposed.

---

1. We do not deem it necessary here to reach the question of the validity of an election held in violation of § 39.2(1), The Code, because of being too soon after a general election. However, the general rule is stated in an early franchise case of *State ex rel. Dusey v. Creston Mut. Tel. Co.,* 195 Iowa 1368, 1372, 191 N.W. 988, 990 (1923), as follows:

[T]he clearly expressed will of the voters should not be thwarted or set aside by the courts because of irregularities, and even illegalities, which are not shown to have in any way affected the result or to have prejudiced any one.

*See also Harney v. Clear Creek Comm. School Dist.,* 261 Iowa 315, 154 N.W.2d 88, 90 (1967); *Younker v. Susong,* 173 Iowa 663, 670, 156 N.W. 24, 27 (1916).

This code section does not expressly provide time limits for setting an election, but Eastern contends it has been given that interpretation by earlier cases. The two cases relied upon most heavily are *Iowa Pub. Serv. v. Tourgee,* 208 Iowa 36, 222 N.W. 882 (1929) and *Lame v. Kramer,* 259 Iowa 675, 145 N.W.2d 597 (1966).

Our court in *Tourgee* said:

Unquestionably . . . it is the duty of the mayor, when such petition is properly filed, to call the election. Doubtless this official is entitled to a *reasonable time* in which to determine the number of signers, their residences, and their ownership of property . . . . Mandamus will not lie, at least, until the expiration of such period, because until then the mayor has not refused to act. . . . As to what is "unreasonable" depends upon the facts and circumstances. (Emphasis added.) 208 Iowa at 39, 222 N.W. at 884.

This language was also quoted with approval in *Lame.* 259 Iowa at 682, 145 N.W.2d at 601.

It is true that these cases held the verifying of the petition was nondiscretionary, because the signatures are either valid or not upon filing. Nothing the city officials did or failed to do could change that, and therefore mandamus would lie to force them to act. They do not say, however, that setting and holding of the election do not involve discretion. In addition, they do not state that an election must be *held* immediately, nor even that it must be *called* immediately. They discussed time only in regard to the necessary determination of whether delay of the official in verifying the petition was so great as to indicate a "refusal to act" so as to provide a basis for a mandamus action.[2]

Clearly, if the test is reasonableness under the circumstances, as stated by those cases, fact issues are generated, and summary judgment would not be appropriate. *See Daboll v. Hoden,* 222 N.W.2d 727 at 734 (Iowa 1974).

Here, the city admitted in its answer that Eastern's petitions were properly signed and filed, so it is not necessary to determine as the court did in *Lame,* whether to order the appropriate officials to investigate and make determinations as to those preliminary matters.

This still leaves two basic issues of law which must be considered as to the city's duties following verification of the petition: (1) when must the city act to call an election; and (2) when must such election be held? The franchise statute, § 364.2(4)(b), provides that the council shall submit the proposal "at the next regular city election or at a special election called for that purpose prior to the next regular city election." It therefore provides the maximum time allowed to hold the election, i. e., no later than the next regular city election. It is silent, however, as to the issue of when the council must act to *call* the election.

The district court ordered the city here to act within 20 days to set the election and to hold it within 60 days.

■ Where a statute prescribes a duty but provides no time limitation for its performance, the duty must be performed within a reasonable time. *Burd v. Board of Education,* 260 Iowa 846, 856, 151 N.W.2d 457, 462–63 (1967); 67 C.J.S. Officers § 114, p. 406.

We apply that general rule to the issues now at hand. The city, in its affidavits filed in resistance to the summary judg-

---

**2.** The *Lame* case did approve a trial court decree which ordered a mayor to *set* a franchise election within five days of the entry of the order. 259 Iowa at 686, 145 N.W.2d at 603. There was no time prescribed in the order, however, as to the *holding* of the election. Also, that case is distinguishable from this one. It was a gas franchise case, tried on its merits and the basis of the order was that the mayor had already had a reasonable time to verify the

petition, not that any statute required it. The supreme court, in its de novo review, agreed. This is not the case here, where summary judgment foreclosed any issue of reasonableness. It should also be noted that, as contended by the city, "reasonableness under the circumstances" takes on new dimensions when dealing with the relatively new and complex matters of cable television.

ment motion, and set out more fully above, gave many reasons for performing its duties as to calling and holding the election in the manner and times in which it did. These matters deal directly with a material fact, i. e., the reasonableness of its acts, and may not be determined without a factual hearing. *Burd v. Board of Education,* 260 Iowa at 855, 151 N.W.2d at 463.

We therefore hold, as to issue (1) above, that a franchise election need not be set "immediately" in the sense of being instantaneous upon verification of the petition, but within a reasonable time under the circumstances. As to issue (2), we hold that the city officials have discretion as to when the election will be held, subject to these limitations: it must be held no later than the next general election, as required by § 364.2(4)(b); and, this discretion in setting and holding the election may not be exercised capriciously or arbitrarily, in which event mandamus would lie under our general principles of law. *See, e. g., Iowa Mut. Tornado Ins. Ass'n v. Timmons,* 252 Iowa 163, 169, 105 N.W.2d 209, 212 (1960); *Lame v. Kramer* 259 Iowa 675, 145 N.W.2d 597 (1966).

Whether these officials here acted arbitrarily or capriciously and whether their timing was reasonable under the circumstances were fact issues and not properly determinable in a summary judgment proceeding.

Because there were disputed issues of material fact in the trial court, because there is no statutory authority for the trial court's setting 20 days and 60 days for the setting and holding of the election, respectively, and because the timeliness of defendants' acts could not be decided here as matters of law, by mere statutory interpretation and application, the trial court erred in entering summary judgment. We reverse and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED.